IN THE MATTER OF THE ESTATE OF PAUL CHESTER ADAMEE, DECEASED

No. 136

(Filed 21 December 1976)

1. **Husband and Wife § 12— separation agreement — resumption of marital relation — agreement rescinded**

    A separation agreement between husband and wife is terminated for every purpose insofar as it remains executory upon their resumption of the marital relation.

2. **Husband and Wife § 12— separation agreement — subsequent cohabitation in marital home — agreement rescinded**

    When separated spouses who have executed a separation agreement resume living together in the home which they occupied before the separation, they hold themselves out as man and wife in the ordinary meaning of that phrase, and, irrespective of whether they have resumed sexual relations, in contemplation of law, their action amounts to a resumption of marital cohabitation which rescinds their separation agreement insofar as it has not been executed; further, a subsequent separation will not revive the agreement.

In re Estate of Adamee

3. **Executors and Administrators § 5; Husband and Wife § 12— separation agreement — revocation by reconciliation — marital relations resumed as matter of law — qualification of wife as administratrix**

   In a proceeding by a wife for issuance of letters of administration following the death of her husband, the evidence showed that the parties resumed marital relations as a matter of law where the evidence tended to show that, after the execution of a separation agreement and consent judgment between husband and wife, the wife returned to the marital home which she and her husband shared before the separation; thereafter the commissioners named in the consent judgment to sell the couple's joint property for division were instructed not to do so; the husband paid the wife's attorney for representing her in the litigation between them; and from the time the wife returned to the marital home until her husband's death, the husband and wife lived continuously in their marital residence. Therefore, the trial court correctly denied the motion of the husband's brother and sisters for summary judgment, but erred in refusing to affirm the clerk's order that the wife was entitled to qualify as administratrix of the estate of her husband and share in his estate as his widow without prejudice by reason of the separation agreement and consent judgment.

4. **Clerks of Court § 3; Courts § 5— probate matters — no concurrent jurisdiction of clerk and superior court judge**

   G.S. 7A-241, as interpreted by the Supreme Court, (1) reemphasizes the fact that the district courts have no jurisdiction of probate matters, and (2) except in those instances where the clerk is disqualified to act, it vests probate jurisdiction in the superior courts to be exercised originally by the clerks as *ex officio* judges of probate in the manner specified in the applicable statutes; therefore, the Court of Appeals erred in holding that the effect of G.S. 7A-240 and G.S. 7A-241 was to take from the superior court clerk "exclusive original jurisdiction of probate matters, to vest in the Clerks and the Superior Court concurrent jurisdiction of probate matters, and to provide for appeals from the Clerk directly to the judges of superior court, bypassing the district courts, on all such matters heard originally before the Clerks."

ON petition for discretionary review of the decision of the Court of Appeals reported in 28 N.C. App. 229, 221 S.E. 2d 370 (1976), affirming the judgment of *Braswell, J.,* entered at the 14 April 1975 Civil Session of the Superior Court of ALAMANCE, docketed and argued as Case No. 88 at the Spring Term 1976.

This proceeding was begun on 5 November 1974 when Raye T. Adamee (Mrs. Adamee) applied for letters of administration on the death of her husband, Paul Chester Adamee (Adamee), who died intestate on 20 August 1974. He was survived by his widow, the appellant, Mrs. Adamee, and by three

sisters and a brother, the appellees. He left no children or lineal descendants.

On 18 November 1974, Jacob Henry Adamee, Violet Adamee Inge, and Winifred Adamee Mitchell, three of appellees, filed an "objection and complaint" to Mrs. Adamee's application for letters of administration. In this pleading they: (1) denied Mrs. Adamee's right to administer or to take any portion of the estate of Adamee on the ground that, in a deed of separation and consent judgment which she and Adamee had executed on 20 December 1973, she had waived her right to administer upon his estate and to share in it; (2) alleged that this deed of separation and consent judgment had not been nullified or superseded and was in full force and effect at the time of Adamee's death; and (3) prayed that Adamee's brother, Jacob Henry Adamee, be appointed his administrator and that judgment be entered declaring Mrs. Adamee not entitled to share in her husband's estate.

In Mrs. Adamee's "response and answer" to the "objection and complaint" she alleged that, after the execution of the separation agreement and consent judgment of 20 December 1973, she and Adamee were reconciled and had resumed their marital relation; that they were living together as husband and wife at the time of his death; and that she is the person entitled to administer his estate.

In a hearing before the clerk of the superior court on 2 December 1974 the parties offered evidence, none of which appears in the record on appeal. "Upon consideration of the evidence and the legal authorities submitted," the clerk entered an order in which he found as a fact, after executing the separation agreement and consent judgment of 20 December 1973, "Paul Chester Adamee and Raye T. Adamee were reconciled and resumed their marital relations and were living together as husband and wife immediately prior to and at the time of the death of Paul Chester Adamee." He concluded and adjudged that by the resumption of marital relations the parties had nullified the separation agreement and consent judgment and that Mrs. Adamee was entitled to administer Adamee's estate and to share in it.

Below the clerk's signature on the foregoing order appears the following entry:

"In open court the petitioners give notice of appeal to the General Court of Justice, Superior Court Division, and request a Jury trial on all issues of fact. All further notice waived.

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that this matter be and is hereby transferred to the Civil Issue Docket for hearing.

"This the 2nd day of December, 1974.

/s/ LOUISE B. WILSON
Clerk of Superior Court"

On 29 January 1975, the brother and sisters of Adamee filed a motion for summary judgment in their favor on the ground that "even if all the allegations contained in the response and answer of Raye T. Adamee were true, such allegations do not revoke, cancel or terminate" the separation agreement and consent judgment.

On 30 January 1975 Mrs. Adamee filed an affidavit and response to the motion for summary judgment in which she again alleged a reconciliation which revoked the separation agreement and consent judgment.

On 3 February 1975 appellees filed exceptions to the specific findings of fact and conclusions of law contained in the clerk's order of 2 December 1974 concerning the alleged reconciliation of Adamee and Mrs. Adamee and her right to share in his estate.

On 6 March 1975 Kathleen Estelle Sumner, the third sister of Adamee, filed an objection to the appointment of Mrs. Adamee as administratrix and adopted the pleadings of her brother and sisters filed earlier. Mrs. Adamee answered, again alleging the reconciliation of the parties had voided the separation agreement and consent judgment of 20 December 1973. The appeal from the clerk came on for hearing at the 14 April 1975 Session of Alamance Superior Court before Judge Braswell, who advised counsel that he would hear the motion for summary judgment and other procedural arguments "'all rolled up into one." The appellees thereupon submitted affidavits which tended to show that, although Mrs. Adamee returned to the marital home in January 1974, she did so only as a matter

of economic convenience and with no intention to resume marital relations with her husband, that no reconciliation had, in fact occurred; that Adamee had told several people that although his wife had returned home they occupied separate bedrooms and "nothing had changed"; that a week before his death Adamee had employed a private detective with whom he had discussed his "marital problems."

Mrs. Adamee submitted affidavits tending to show that a reconciliation and resumption of marital relations had occurred early in 1974 when she returned to the marital home; that thereafter they occupied one bedroom and one bed; that in March 1974 Adamee paid to her attorney the balance she owed him for representing her in the suit against Adamee; that the respective attorneys for Adamee and Mrs. Adamee, who had been appointed commissioners in the consent judgment to sell the parties' jointly owned property at public auction and divide the proceeds equally between them were instructed that the parties no longer desired a sale, and no sale was made; that Adamee told friends he and his wife had worked out their problems and were planning an early retirement in order to open an antique shop in Alabama; that the month before his death Adamee had instructed a friend in Alabama to proceed with attempts to purchase a certain piece of property for himself and wife jointly; that they had had problems but they had been settled.

After the court had heard the affidavits, counsel for Mrs. Adamee called her as a witness in her own behalf. Whereupon Judge Braswell declared the evidence closed, and Mrs. Adamee did not testify. The court heard the argument of counsel and entered an order in which he recited the procedural history of this cause and ruled as follows: (1) Appellees' exceptions to the clerk's order of 2 December 1974, not having been filed until 3 February 1975, came too late to be considered and are dismissed. (2) The appellees' motion for summary judgment is denied. (3) The evidence raises a material issue of fact. While "this trial court now believes it is empowered to uphold the action of the Clerk by order of December 2, 1974, . . . in order that it may be seen . . . [to] do substantial justice to its citizens, . . . IT IS ORDERED that there shall be a jury trial upon the one issue: 'Did the late Paul Chester Adamee and his wife Raye T. Adamee become reconciled and renew their marital relations after December 20, 1973?' "

Upon Mrs. Adamee's appeal, the Court of Appeals affirmed the order of Judge Braswell, and we allowed her petition for discretionary review.

*Spencer B. Ennis and Latham, Wood & Cooper for petitioner appellees.*

*Long, Ridge & Long by Paul H. Ridge and Daniel H. Monroe, Jr., for Raye T. Adamee, respondent appellant.*

SHARP, Chief Justice.

[1]   It is well settled in our law that a separation agreement between husband and wife is terminated for every purpose insofar as it remains executory upon their resumption of the marital relation. *Tilley v. Tilley,* 268 N.C. 630, 151 S.E. 2d 592 (1966); *Hutchins v. Hutchins,* 260 N.C. 628, 133 S.E. 2d 459 (1963); *Jones v. Lewis,* 243 N.C. 259, 90 S.E. 2d 547 (1955); 2 Lee, Family Law, § 200, p. 418 (1963). As Justice Brogden noted in *State v. Gossett,* 203 N.C. 641, 643, 166 S.E. 754, 755 (1932), the heart of a separation agreement is the parties' intention and agreement to live separate and apart forever, and when a husband and wife enter into a deed of separation the policy of the law is that they are to live separate. Therefore, they void the separation agreement if they re-establish a matrimonial home.

The same public policy which will not permit spouses to continue to live together in the same home—holding themselves out to the public as husband and wife—to sue each other for an absolute divorce on the ground of separation or to base the period of separation required for a divorce on any time they live together, will also nullify a separation agreement if the parties resume marital cohabitation. Whether used in a separation agreement or a divorce statute, the words "live separate and apart" have the same meaning. The cessation of cohabitation which provides grounds for divorce and the resumption of cohabitation which will abrogate a separation agreement are defined in the same terms.

Separation as grounds for a divorce "implies living apart for the entire period in such manner that those who come in contact with them may see that the husband and wife are not living together. For the purpose of obtaining a divorce under G.S. 50-5(4), or G.S. 50-6, separation may not be predicated

upon evidence which shows that during the period the parties have held themselves out as husband and wife living together, nor when the association between them has been of such character as to induce others who observe them to regard them as living together in the ordinary acceptation of that descriptive phrase. This was the holding in *Dudley v. Dudley,* 225 N.C. 83, in an opinion written for the Court by *Justice Denny.* Separation means cessation of cohabitation, and cohabitation means living together as man and wife, though not necessarily implying sexual relations. Cohabitation includes other marital responsibilities and duties." *Young v. Young,* 225 N.C. 340, 344, 34 S.E. 2d 154, 157 (1945).

In *Dudley v. Dudley,* 225 N.C. 83, 86, 33 S.E. 2d 489, 491 (1945), Justice Denny (later Chief Justice), said: "The overwhelming weight of authority as to what is meant by living 'separate and apart,' is in accord with the view expressed in 17 Am. Jur., sec. 162, p. 232 as follows: . . . 'what the law makes a ground for divorce is the living separately and apart of the husband and wife continuously for a certain number of years. This separation implies something more than a discontinuance of sexual relations, whether the discontinuance is occasioned by the refusal of the wife to continue them or not. It implies the living apart for such period in such manner that those in the neighborhood may see that the husband and wife are not living together.' (Citations omitted.)

"Marriage is not a private affair, involving the contracting parties alone. Society has an interest in the marital status of its members, and when a husband and wife live in the same house and hold themselves out to the world as man and wife, a divorce will not be granted on the ground of separation, when the only evidence of such separation must, in the language of the Supreme Court of Louisiana (in the case of *Hava v. Chavigny,* 147 La. 331, 84 So. 892) 'be sought behind the closed doors of the matrimonial domicile.' Our statute contemplates the living separately and apart from each other, the complete cessation of cohabitation."

[2] We hold that when separated spouses who have executed a separation agreement resume living together in the home which they occupied before the separation, they hold themselves out as man and wife "in the ordinary acceptation of the descriptive phrase." Irrespective of whether they have resumed sexual

In re Estate of Adamee

relations, in contemplation of law, their action amounts to a resumption of marital cohabitation which rescinded their separation agreement insofar as it had not been executed. Further, a subsequent separation will not revive the agreement. *See Campbell v. Campbell*, 234 N.C. 188, 66 S.E. 2d 672 (1951).

[3]  All the evidence offered by appellees in support of their motion for summary judgment and by appellants in opposition to it, tends to show that after the execution of the separation agreement and consent judgment on 20 December 1973, Mrs. Adamee returned to the marital home which she and Adamee had occupied prior to the separation; that thereafter the commissioners named in the consent judgment to sell the couple's joint property for division were instructed not to do so; that Adamee paid Mrs. Adamee's attorney for representing her in the litigation between them; and that from January 1974 until Adamee's death on 20 August 1974, he and Mrs. Adamee lived together continuously in their marital residence. Therefore, no issue arose for either judge or jury to decide as to their resumption of marital relations. As a matter of law they had done so.

It follows that Judge Braswell correctly denied appellees' motion for summary judgment but that he erred in refusing to affirm the clerk's order that Mrs. Adamee is entitled to qualify as administratrix of the estate of Adamee and share in his estate as his widow without prejudice by reason of the separation agreement and consent judgment of 20 December 1973. It also follows that the Court of Appeals erred when it affirmed Judge Braswell's judgment.

In its consideration of this case the Court of Appeals began with the assumption that the appeal involved a disputed fact, that is, whether a reconciliation and resumption of marital relations had actually occurred between Adamee and Mrs. Adamee. We, however, have viewed and decided the case as presenting a question of law arising upon undisputed facts.

Having posed the case as it did, the Court of Appeals recognized that our decision in *In re Estate of Lowther*, 271 N.C. 345, 156 S.E. 2d 693 (1967) would control the disposition of the appeal and require a reversal of Judge Braswell's judgment unless subsequently enacted statutes had changed the law upon which *Lowther* was based. The Court of Appeals then held that the Judicial Department Act of 1965 had indeed rendered *Lowther* no longer authoritative for the proposition it decided.

This holding, with which we do not agree, requires us to examine and compare the applicable statutes as they existed before and after *Lowther*.

In *Lowther*, upon petition of the children of the decedent, on 23 September 1966, the clerk of the superior court, acting under G.S. 28-32 (1966), removed the administratrix (whom he had appointed in 1964) upon his finding that she was not the widow of the decedent. Without challenging that finding by an exception, the administratrix gave notice of appeal to the presiding judge. After a hearing, on 27 December 1966 the judge ordered the cause transferred to the civil issue docket for a determination of the issue by a jury. Upon petitioners' appeal, this Court held (1) that when no exceptions are taken to the specific findings of fact upon which the clerk removes an administrator, an appeal presents only the question whether the facts found support the judgment; (2) that as to any finding of fact properly challenged by an exception, the judge will hear the matter *de novo* and either affirm, reverse, or modify that finding; and (3) if the judge deems it advisable, he may submit the issue to a jury. Upon appeal we reversed the judgment of the superior court and directed the clerk's order of removal reinstated.

In the present case the Court of Appeals has held that the effect of the repeal of G.S. 2-1 (1969) and the enactment of G.S. 7A-240 and G.S. 7A-241 (1969) was "to take from the Clerk exclusive original jurisdiction of probate matters, to vest in the Clerk and the Superior Court concurrent jurisdiction of probate matters, and to provide for appeals from the Clerk directly to the judges of superior court, bypassing the district courts, on all such matters heard originally before the Clerks." *In re Adamee*, 28 N.C. App. at 234, 221 S.E. 2d at 373-74. The conclusion was that, upon appeal, appellees were entitled to have the judge hear and determine all matters in controversy as if the case was originally before him; that the judge, "in the exercise of his inherent powers" had the right to submit the one issue involved to the jury. The Court directed, however, that "[i]f, in this case, the Superior Court finds error in the order of the Clerk relative to the granting of letters of administration, it will not appoint a personal representative but must remand the cause to the Clerk for this purpose consistent with the decision of the Superior Court; the assignment of original authority of probate matters to the Clerk in G.S.

28A-2-1 is supported by, and not contravened by, G.S. 7A-241." *Id.* at 236, 221 S.E. 2d at 375.

*Lowther* originated in the second judicial district and was decided 20 September 1967. At that time the "Judicial Department Act of 1965," ch. 310, N. C. Sess. Laws (1965), codified as N. C. Gen. Stats., Ch. 7A, was not applicable in the second judicial district. *See* G.S. 7A-131 and G.S. 7A-252 (1969). However, on 7 December 1970, N. C. Gen. Stats., Ch. 7A finally became applicable in every judicial district of the State.

G.S. 7A-240 provides in pertinent part that *except for* "proceedings in probate and the administration of decedents' estates," the original civil jurisdiction vested in the trial divisions of the General Court of Justice is vested concurrently in each such division. This section excludes any jurisdiction of probate and estate matters in the district courts.

By G.S. 7A-241 "[e]xclusive original jurisdiction for the probate of wills and the administration of decedents' estates is vested in the superior court division, and is exercised by the superior courts and by the clerks of superior court as ex officio judges of probate *according to the practice and procedure provided by law*." (Emphasis added.)

[4] As we interpret G.S. 7A-241 it (1) re-emphasizes the fact that the district courts have no jurisdiction of probate matters, and (2) except in those instances where the clerk is disqualified to act, it vests probate jurisdiction in the superior courts to be exercised originally by the clerks as ex officio judges of probate in the manner specified in the applicable statutes. These statutes, to which reference will be made later, clearly give the clerk exclusive original probate jurisdiction. In such matters, appeals from the clerk "lie to the judge of superior court having jurisdiction from all orders and judgments of the clerk for review in all matter of law or legal inference in accordance with the procedure provided in Chapter 1 of the General Statutes." G.S. 7A-251 (1969).

At the time of its enactment, G.S. 2-1 (formerly N. C. Code, sec. 102 (1883)) "abolished the office of probate judge and transferred the duties which the Clerks had previously performed as judges of probate to them as clerks of the Superior Court." Although this section abolished the office of probate judge *eo nomine,* "the special probate powers and duties of

the clerk continued distinct and separate from their general duties as clerk of the courts to which they belong." *In re Estate of Lowther, supra* at 348, 156 S.E. 2d at 696.

At the time of its repeal as of 1 October 1971, G.S. 2-1 had already been superseded by N. C. Gen. Stats. Ch. 7A. The title of the repealing act, N. C. Sess. Laws, Ch. 363, sec. 11 (1971), is self-explanatory: "An Act to Repeal Various Obsolete Sections of General Statutes Chapter 2 (Clerk of the Superior Court), and to Revise the Remaining Sections and Transfer them to Chapter 7A (The Judicial Department)." Just as the special probate powers and duties of the clerks continued after the enactment of G.S. 2-1 so did they continue after its repeal. Under G.S. 7A-241 the clerk of superior court, "as ex officio judges of probate," continues to exercise probate jurisdiction "according to the practice and procedure provided by law"; and in doing so, he continues to act as "a judicial officer of the superior court division, and not as a separate court." G.S. 7A-40 (1969). This is the view expressed by Professor Dickson Phillips in 1 McIntosh, North Carolina Practice and Procedure, § 196 (Supp. 1970) wherein he said:

"Under the Judicial Department Act of 1965, creating and structuring the General Court of Justice, the Clerk of Superior Court retains his pre-existing judicial powers in matters of probate and administration, guardianship, special proceedings, and in matters of pleading and practice, as a judicial officer of the unified Court."

When G.S. 7A-241 was enacted in 1965 its reference to "the practice and procedure provided by law" was a reference to N. C. Gen. Stats. Ch. 28, which remained applicable to the estates of all decedents dying on or before 1 October 1975. After that date the reference in G.S. 7A-241 was to N. C. Gen. Stats. Ch. 28A. *See* N. C. Sess. Laws, Ch. 1329, sec. 5 (1973) as amended by N. C. Sess. Laws, Ch. 118 (1975).

Prior to its repeal G.S. 28-1 (1966) gave a clerk of superior court jurisdiction within his county to take proof of wills and to grant letters testamentary and letters of administration in cases of intestacy where the decedent was domiciled in his county; a nonresident with assets in the county; a nonresident having assets in the State who died in the county; and a nonresident party to litigation pending in the county. G.S.

28-1 was carried forward in N. C. Gen. Stats., Ch. 28A as two sections, G.S. 28A-2-1 and G.S. 28A-3-1 (Cum. Supp. 1975).

Section 28A-2-1 provides: "The clerk of superior court of each county, ex officio judge of probate, shall have jurisdiction of the administration, settlement, and distribution of estates of decedents including, but not limited to, the following: (1) probate of wills; (2) granting of letters testamentary and of administration, or other proper letters of authority for the administration of estates." G.S. 28A-3-1 designates the proper county, the "venue for probate of a will and for all proceedings relating to the administration of the estate of a decedent."

Pertinent here is the comment of Professor Wiggins in the 1976 pocket supplement to his treatise on *1 Wills and Administration of Estates* in North Carolina, § 115: "Article 2, sections 28A-2-1 through 28A-2-3 of Chapter 28, as did the former law, vests in the clerk of superior court exclusive jurisdiction of the probate of wills, administration, settlement and distribution of the decedents' estates, the granting of letters, testamentary and of administration, or other letters of authority. Unlike the former law, the jurisdiction of the clerk is no longer limited by such considerations as where the decedent died, left property or was domiciled. To expedite the handling of the matters, the assistant clerk is given rather broad powers of jurisdiction."

Under G.S. 28-1 and G.S. 31-12 (1966), the former law, if the clerk had either a direct or an indirect beneficial interest in the probate of a will or the administration of an estate or trust, the law divested him of jurisdiction and vested jurisdiction in either the judge of superior court, or under certain circumstances, the clerk of superior court of any adjoining county. Section 28A-2-3 (Cum. Supp. 1974) provides that, if the clerk has an interest in an estate or trust under his jurisdiction, the senior resident superior court judge is vested with exclusive original jurisdiction of the estate or trust. *See* Wiggins and Myers, *Jurisdiction for Probate of Wills and Administration of Estates of Decedents,* 11 Wake Forest L. Rev. 7 (1975).

The right of interested persons to contest the appointment of a decedent's personal representative and the procedure for doing so under the former law remains substantially unchanged under the present law. *See* G.S. 28-30, G.S. 28-32 (1966) and G.S. 28A-6-4 (Cum. Supp. 1976).

The Court of Appeals, after noting that "G.S. 28A-2-1 in substance vests in the Clerk 'jurisdiction' of the named probate matters without vesting concurrent jurisdiction in the superior court," added, "But we find that the jurisdiction statutes in Chapter 7A are controlling"; that G.S. 28A-2-1 assigns original authority to the Clerk but "was not intended to change the vesting of concurrent jurisdiction in the Clerk and the Superior Court under G.S. 7A-241." *In re Adamee, supra* at 235, 221 S.E. 2d at 374.

The Court of Appeals has misconstrued G.S. 7A-241. This section does not say that concurrent jurisdiction in probate matters is vested in the clerk and the judge of the superior court. It says that probate jurisdiction is vested in the superior court division to be exercised by the superior court and the clerk according to the practice and procedure provided by law. The law, that is, the statutes specifying this practice and procedure, have allocated the jurisdiction between the clerk and the judge. By G.S. 28A-2-1 the clerk is given exclusive original jurisdiction of "the administration, settlement and distribution of estates of decedents" except in cases where the clerk is disqualified to act. G.S. 28A-2-3. When the clerk is disqualified to exercise his jurisdiction the judge has equal authority to perform the clerk's probate duties and, in that sense, he exercises concurrent jurisdiction of probate matters. In all other instances, however, the judge's probate jurisdiction is, in effect, that of an appellate court.

G.S. 7A-251 provides for appeals from the clerk: "In all matters properly cognizable in the superior court division which are heard originally before the clerk of superior court, appeals lie to the judge of superior court having jurisdiction from all orders and judgments of the clerk for review in all matters of law or legal inference in accordance with the procedure provided in Chapter 1 of the General Statutes."

The Court of Appeals' directive to the superior court— that in the event it found error in the clerk's ruling with reference to Mrs. Adamee's right to administer and to share in the estate of her husband, it would not appoint a personal representative, "but must remand the case to the clerk for that purpose"—appears to be inconsistent with its "finding" that the clerk and the superior court have concurrent jurisdiction in probate matters. "Courts of concurrent jurisdiction are courts of equal dignity as to the matters concurrently cognizable, neither

having supervisory power over process from the other, and . . . the one first exercising such jurisdiction acquires control to the exclusion of the other." 21 C.J.S. *Courts* § 488 (1940).

Finally, we note that G.S. 7A-251, which provides for appeals from the clerk to the judge, directs that they be taken in accordance with the procedure provided in Chapter 1 of the General Statutes. The applicable statutes were in effect at the time of the decision in *In re Estate of Lowther* and are discussed in the opinion in that case. These statutes are still in effect.

For the reasons stated, the decision of the Court of Appeals affirming the judgment of the superior court is reversed. The Court of Appeals will remand the cause to the superior court with instructions that it affirm the order of the clerk.

Reversed and remanded.